UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>UBS AG, UBS (Luxembourg) SA, et al.,<br><br>Defendants. | Adv. Pro. No. 10-04285 (CGM) |

**MEMORANDUM DECISION DENYING
MOTION TO WITHDRAW AS COUNSEL**

**A P P E A R A N C E S :**

*Katten Muchin Rosenman LLP, Attorneys for Access Defendants*
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
By:   Anthony L. Paccione
       Brian L. Muldrew

*Attorneys for Irving H. Picard, Trustee for the Substantively*
*Consolidated SIPA Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:     Gonzalo S. Zeballos
        Oren J. Warshavsky
        David J. Sheehan
        Tatiana Markel
Of Counsel:
        Benjamin Pergament
        Robertson Beckerlegge
        Geoffrey A. North
        Michelle R. Usitalo
        Carlos Ramos-Mrosovsky

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Pending before the Court is the motion to withdraw (the "Motion") of Katten Muchin Rosenman LLP ("Katten"), counsel for defendants Access International Advisors, LLC ("Access LLC"), Access International Advisors, Ltd. ("Access Ltd."), Access Management (Luxembourg), S.A. ("AML"), Access Partners, S.A ("AP (Lux)"), Patrick Littaye ("Littaye,") and Groupement Financier Ltd. ("Groupement,")  (collectively, the "Access Defendants").  (Mot. to Withdraw at 1–3, ECF[1] No. 390).  Katten moves to withdraw pursuant to Local Bankruptcy Rule 2090-1(e) due to nonpayment of fees.  (*Id.* ¶¶ 10, 12).  The Trustee opposes the Motion. (Opp'n, ECF No. 401).   For the reasons set forth herein, the Motion is denied.

## BACKGROUND

The Court assumes familiarity with the background of the BLMIS Ponzi scheme operated by Bernard L. Madoff ("Madoff") and its SIPA proceeding.  *See Picard v. Citibank, N.A. (In re*

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 10-4285-cgm.

*BLMIS)*, 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

Katten was retained by the Access Defendants around January 2009. (Mot. to Withdraw ¶ 1, ECF No. 390). This adversary proceeding was filed on November 23, 2010. (*See* Compl., ECF No. 1.) Via the second amended complaint (the "Amended Complaint"), the Trustee seeks to recover transfers of customer property allegedly made by BLMIS to the Access Defendants, Luxalpha SICAV ("Luxalpha"), and various other entities.[2]

The Access Defendants are all foreign entities or individuals. Groupement is a British Virgin Islands ("BVI") investment fund that invested 100% of its assets directly with BLMIS. (Am. Compl. ¶ 104, ECF No. 274). Littaye is a French citizen. (*Id.* ¶ 101). Access Ltd. is a Bahamas limited company. (*Id.* ¶ 88). AML and AP (Lux) are Luxembourg limited liability companies. (*Id.* ¶¶ 92, 95).

Groupement and Luxalpha (collectively, the "Feeder Funds") were investment vehicles that fed into BLMIS. (Am. Compl. ¶ 16, ECF No. 274). It is alleged that the Feeder Funds were created to invest in BLMIS with full knowledge of BLMIS' fraud. (*Id.* ¶¶ 6, 233, 352, 397). The knowledge of BLMIS's fraud ultimately stems from a close friendship between Madoff and Littaye that dates back to 1985. (*Id.* ¶¶ 1, 109). Littaye and Thierry Magon de la Villehuchet ("Villehuchet") started an investment firm called Access International Advisors. (*Id.* ¶ 2). Access International Advisors is comprised of a series of investment companies, including Access Inc., Access LLC, Access Ltd., AIA (Lux), and AP (Lux). (*Id.*). The Feeder Funds were

---

[2] The Amended Complaint refers to UBS AG, UBS SA, UBS Fund Services (Luxembourg) S.A., and UBS Third Party Management Company S.A. collectively as "UBS" or the "UBS Defendants." (Am. Compl. ¶ 5, ECF No. 274).

Page **3** of **16**

established by Access International Advisors as two of several BLMIS feeder funds. (Id. ¶¶ 2, 110).

The Amended Complaint asserts eight counts. (Am. Compl. ¶¶ 348–99, ECF No. 274). Counts two, three, four, five, and six are asserted against Groupement and Luxalpha. (*Id.* ¶¶ 1, 356–88). In counts two through six, the Trustee is seeking to recover transfers of BLMIS customer property that BLMIS made to the Feeder Funds. *Id.* Count seven asserts against all other Defendants in this proceeding, including Littaye and various entities within Access International Advisors represented by Katten ("Subsequent Transferee Defendants"). (*Id.* ¶¶ 332–40) (explaining the subsequent transfers to each Subsequent Transferee in detail); (*id.* ¶¶ 389–92). In count seven, the Trustee is seeking to recover subsequent transfers of BLMIS customer property that was initially transferred from BLMIS to the Feeder Funds and then subsequently transferred from the Feeder Funds to the Subsequent Transfer Defendants. (*Id.* ¶¶ 332–40).

Through its representation of the Access Defendants, Katten has actively participated in this adversary proceeding and filed numerous motions, including motions to dismiss in both 2012 and 2022. (*See* Mot. to Dismiss, ECF No. 104; Mot. to Dismiss, ECF No. 290). The Court heard Katten present oral argument on the Access Defendants' April 2022 motion to dismiss on September 14, 2022. (*See* Hr'g Tr. 72:14–15, ECF No. 326 ("Anthony Paccione [appearing] on behalf of the Access defendants.")). This Court denied the Access Defendants' motion to dismiss on November 18, 2022. (Mem. Dec., ECF No. 336). The Access Defendants filed an Answer to the Amended Complaint on February 28, 2023. (Answer, ECF No. 361).

On September 25, 2023, Katten moved to withdraw as attorney for the Access Defendants. (Mot. to Withdraw, ECF No. 390). Katten states that it "was informed that due to

lack of funds, the Access Defendants will not pay Katten's past due legal fees and costs, and that they would not pay for any such services in the future." (*Id.* ¶ 3). The Access Defendants confirmed this "position in writing" in July and August of 2023. (*Id.* ¶ 4). By September 2023, "the Access Defendants ha[d] unpaid billed fees in the amount of $70,068.38." (*Id.* ¶ 8).

The Trustee opposes the Motion, arguing that allowing Katten to withdraw would severely disrupt the proceedings and prejudice the Trustee by rendering the Access Defendants "judgment-proof by forcing the Trustee to obtain a default judgment, which will allow the Access Defendants to raise potentially strong defenses to enforcement in their home jurisdictions that would not be available here." (Opp'n at 2, ECF No. 401). Littaye, one of the defendants represented by Katten, has filed numerous letters stating that he wishes the Court to require Katten to stay on as his attorney. (*See* Letters, ECF Nos. 399, 400, 405, 409, 416). Katten filed a reply memorandum (Reply, ECF No. 412) and submitted declarations of Anthony L. Paccione (Paccione Decl., ECF No. 413) and Joseph Richard Payne (Payne Decl., ECF No. 414) on February 9, 2024, in which it clarified that "Katten is not seeking withdrawal because of unpaid fees (which exceed $70,000). Rather Katten is seeking withdrawal because the Access Defendants have unequivocally stated they will not pay Katten's fees and expenses going forward because they have no money to do so." (Paccione Decl. ¶ 21, ECF No. 413). Katten describes the Access Defendants' lack of cooperation as "additional grounds for withdrawal." (*Id.* ¶ 23). The Court held a hearing on the Motion on February 14, 2024 (the "Hearing"). (*See* Hr'g Tr., ECF No. 423).

## **DISCUSSION**

**Cause for Withdrawal**

Withdrawal of counsel is governed by Local Bankruptcy Rule 2090-1(e), which states that "[a]n attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown." Local Bankr. R. 2090-1(e). This rule is adopted from Local Civil Rule 1.4, which states in relevant part:

> An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar . . . .

S.D.N.Y. Local Civ. R. 1.4. "The Bankruptcy Court's local rule is an adaptation of S.D.N.Y. Local Civil Rule 1.4 and as such informs the Bankruptcy Court's local rule." *Goldstein v. Albert (In re Albert)*, 277 B.R. 38, 45 (Bankr. S.D.N.Y. 2002).

"It is generally said of the attorney-client relationship that '[w]hen an attorney is retained to conduct a legal proceeding, he enters into an entire contract to conduct the proceeding to a conclusion and he may not abandon his relation without reasonable or justifiable cause.'" *Malarkey v. Texaco, Inc.*, 81 Civ. 5224 (CSH), 1989 WL 88709, at *1 (S.D.N.Y. July 31, 1989) (quoting *Rindner v. Cannon Mills, Inc.*, 127 Misc. 2d 604, 605 (Sup. Ct. Rockland Cty. 1985)); *see also United States v. Vilar*, 731 F.3d 255, 257 (2d Cir. 2013) ("Full availability of legal counsel requires . . . that lawyers who undertake representation complete the work involved." (quoting Lawyer's Code of Professional Responsibility, adopted by New York State Bar Association, EC 2-31)); *see also Wilson v. Pasquale's DaMarino's, Inc.*, No. 10 CIV. 2709 (PGG), 2018 WL 4761574, at *8 (S.D.N.Y. Sept. 30, 2018).

"It is well-settled that a court has 'considerable discretion in deciding a motion for withdrawal of counsel.'" *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 1:10 C 2333 MEA, 2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014) (quoting *SEC v. Pentagon Capital Mgt. PLC,* No. 08 C 3324, 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013)); *Whiting v. Lacara,* 187 F.3d 317, 320 (2d Cir. 1999)). "Whether to grant or deny a motion to withdraw as counsel 'falls to the sound discretion of the trial court.'" *Stair v. Calhoun*, 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010) (quoting *In re Albert*, 277 B.R. at 47). The Court "must consider (1) the reasons for withdrawal, and (2) the impact of the withdrawal on the timing of the proceeding." *Mendez v. K&Y Peace Corp.*, No. 16-CV-05562 (SN), 2017 WL 11808872, at *1 (S.D.N.Y. Sept. 27, 2017); *Bruce Lee*, 2014 WL 1087934, at *1; *see also S.E.C. v. Pentagon Cap. Mgmt. PLC*, No. 08 CIV. 3324 RWS, 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013) ("[A] court may consider the 'protracted history of the litigation' when deciding whether or not to permit counsel to withdraw.") (citations omitted).

"[I]n the absence of a compelling justification, the Court will not relieve an attorney from his obligations." *Foster v. City of New York*, 96 Civ. 9271 (PKL), 2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000). Courts have held that satisfactory reasons for withdrawal include "a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client." *Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) (quoting *Naguib v. Pub. Health Solutions*, No. 12–CV–2561 (ENV)(LB), 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)). "An application for withdrawal must be supported by an affidavit and a showing of satisfactory reasons 'sufficient to constitute cause for withdrawal.'" *In re WB Bridge Hotel LLC*, No. 20-23288 (SHL), 2024 WL 424471, at *4 (Bankr. S.D.N.Y. Feb. 5, 2024) (quoting *In re Albert*, 277 B.R. at 45).

**Nonpayment of Legal Fees**

Katten argues that cause can be found in its client's inability to pay legal fees. (Mot. to Withdraw ¶ 12, ECF No. 390) ("The reason for withdrawal here is the nonpayment of substantial fees—both past and in the future."). The mere "[n]onpayment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (quoting *In re Albert*, 277 B.R. at 50); *see also Fed. Trade Comm'n v. Vantage Point Servs.*, LLC, No. 15-CV-6S, 2018 WL 2120139, at *2 (W.D.N.Y. May 8, 2018).

The Second Circuit has acknowledged that, under certain circumstances, "[a] client's refusal to pay attorney's fees may constitute 'good cause' to withdraw." *Parker*, 439 F.3d at 104 (quoting *McGuire v. Wilson*, 735 F. Supp. 83, 84 (S.D.N.Y.1990)). While a client's "[f]ailure to pay legal fees has been found to be a legitimate ground for granting a motion to withdraw by several courts in this Circuit . . . . [i]n most cases . . . courts have permitted counsel to withdraw for lack of payment only where the client either deliberately disregarded financial obligations or failed to cooperate with counsel." *Stair v. Calhoun*, 722 F. Supp. 2d at 268(citations omitted); *see also In re Albert*, 277 B.R. at 45– 46 ("A number of courts have held that nonpayment of fees alone is insufficient cause for the withdrawal of counsel. . . Cause for withdrawal has been found, however, where in addition to nonpayment of fees, counsel has been the object of hostile conduct by the client.").

The Eastern District Court in *Stair* found a failure to pay "for over two years" coupled with the client's admission that he could not pay future amounts to be sufficient. *Stair v. Calhoun*, 722 F. Supp. 2d at 265. Similarly, this Court has found that a "motion for withdrawal made by an attorney who has not received full payment may be denied where this will not

impose an unreasonable financial burden." *In re Albert*, 277 B.R. at 46 (citing *In re Meyers*, 120 B.R. 751 (Bankr. S.D.N.Y. 1990)). In *Albert*, this Court found it impermissible for the firm to withdraw where the unpaid amount was "less than ten percent of what has already been paid" by the client. *In re Albert*, 277 B.R. at 44; *see also Doe v. Syracuse Univ.,* No. 5:18-CV-01100 (BKS/TWD), 2019 WL 13117373, at *3 (N.D.N.Y. July 16, 2019) (finding denial of motion to withdraw would "not impose an unreasonable financial burden to [the moving firm] who has already been paid the majority of what is owed on the two retainers put together."), *on reconsideration*, No. 5:18-CV-01100 (BKA/TWD), 2021 WL 365839 (N.D.N.Y. Feb. 3, 2021).

Katten reports at the time of filing its motion to withdraw that "the Access Defendants have unpaid billed fees in the amount of $70,068.38." (Mem. L. ¶ 8, ECF No. 390). Katten may wish for this Court to conduct a simple comparison of that amount to the unpaid amounts at issue in other cases. (Reply Mem. at 4, ECF No. 412) (comparing the unpaid $58,676.85 in legal fees which formed the basis for the Eastern District Court in *Stair* to grant a firm's motion to dismiss). However, the absolute amount owed, considered separate from the history of the firm's representation and billing, is not what matters. Were that the case, the Court might grant a withdrawal for a few weeks' worth of unpaid fees in these adversary proceedings, while denying withdrawal for years' worth of unpaid work in a Chapter 7 or 13 consumer case.[3] In so far cause to withdraw is based on the amount of unpaid fees to this point, the Court will look consider the context of the firm's representation.

---

[3] "Attorneys charge an average of $1,229 to file and represent a debtor in a chapter 7 case and an average of $3,217 to file and represent a debtor in a chapter 13 case." Katherine M. Porter, Pamela Foohey, Robert M. Lawless and Deborah Thorne, "*'No Money Down' Bankruptcy*, 90 S. CAL. L. REV. 1055, 1058 (2017) available at https://www.repository.law.indiana.edu/facpub/2639 (reporting data "from 2007 and 2013-15, inflated to July 2015 dollars based on the Consumer Price Index."); *see also* Lois R. Lupica, *The Consumer Bankruptcy Fee Study*: Final Report, 20 AM. BANKR. INST. L. REV. 17, 30 (2012), available at https://abi-org-corp.s3.amazonaws.com/law-review-articles/11lupica.pdf (reporting that in chapter 13 cases, "[p]ost-BAPCPA, the mean attorney fee increased 24% to $2,564.").

Katten was retained by the Access Defendants fifteen years ago and has represented them in this adversary proceeding since its inception over thirteen years ago. (Mot. to Withdraw ¶ 2, ECF No. 390; Compl., ECF No. 2). Katten's first unpaid bill was reportedly "at least six months" prior to the date that the Motion was filed. (Hr'g. Tr. 13:8, ECF No. 423). In the context of Katten's long history representing its clients, this period does not by itself amount to cause to withdraw. *Cf. Stair v. Calhoun*, 722 F. Supp. 2d at 265 (granting withdrawal in June 2010 in case filed in September 2007, where a after client did "not made any payment toward his outstanding legal balance . . . since March 12, 2008."). The Court cannot now make an evaluation of the unpaid fees as a percent of total fees generated by Katten without further evidence. *See In re Albert*, 277 B.R. 38, 44 (Bankr. S.D.N.Y. 2002) (denying motion to withdrawal where firm was "owed less than ten percent of what [had] been paid."). Katten is free to file a second motion to withdrawal with "a showing by affidavit or otherwise of satisfactory" evidence that unpaid fees have been substantial. *See id.* at 45 (quoting S.D.N.Y. Local Civ. R. 1.4).

**Katten's Long-Standing Awareness of its Clients' Inability to Pay**

When evaluating a motion to withdraw based on nonpayment of fees, courts may consider the warning that the law firm had regarding its client's future inability to pay. *See Wilson v. Pasquale's DaMarino's, Inc.*, 2018 WL 4761574, at *9 (S.D.N.Y. Sept. 30, 2018) ("For whatever reason, [the movant] nonetheless chose to take on this representation. It will not be heard to complain now that its fees have not been paid."); *see also In re Meyers*, 120 B.R. 751, 752 (Bankr. S.D.N.Y. 1990) ("[T]he unforeseen developments complained of by counsel should have been little surprise."). In *Albert*, this Court considered not only the amount owed,

but also the law firm's "comprehensive knowledge of the case" in assessing the "financial burden" on the firm. (*In re Albert*, 277 B.R. at 46).

Katten notes that "as an accommodation to these clients, Katten has been billing its time at fifty percent (50%) of its standard rates since July 2016." (Mem. L. ¶ 7, ECF No. 390). At some point, it "became clear" to Katten that "even at that reduced rate, [its] clients will not pay [its] fees going forward in the future." (Hr'g Tr. 13:3–4, ECF No. 423). At the Hearing, Katten stated that the last time its client paid fees was "[s]ometime last year," meaning 2023. (*Id.* 12:16–20). Before its clients stopped paying its fees, Katten was compensated for the work it did on its clients' motion to dismiss "and also the work [Katten] did on the submitting the answer." (*Id.* 12:21–24). Katten argued that it "provided [the Access Defendants] with warning about the need to be compensated. (*Id.* 13:13–14). "They were willing -- they understood that full well and then ultimately decided to announce that they will not pay us going forward in the future, because they simply do not, according to them, do not have the money to pay us going forward." (*Id.* 13:14–19).

If Katten wishes to be commended for the past seven years representation at the reduced rate, it will be disappointed. The Court is left to wonder why, knowing that its clients were on shaky financial grounds, Katten chose to pursue several years of litigation and only move to withdraw after the Court denied the Access Defendants' motion to dismiss. Katten was able to subsidize the Access Defendants' motion at a reduced rate. It is unclear why it should not extend that same generosity to the Trustee for some reasonable period of time through discovery.

**The Access Defendants' Future Inability to Pay**

Katten provided contradictory statements as to whether its clients' future inability to pay is the sole or a partial ground for withdrawal. (*Compare* Mem. L. ¶ 12, ECF No. 390) ("The

reason for withdrawal here is the nonpayment of substantial fees—both past and in the future.") *with* (Paccione Decl. ¶ 21, ECF No. 413) ("Katten is not seeking withdrawal because of unpaid fees . . . . Rather, Katten is seeking withdrawal because the Access Defendants have unequivocally stated they will not pay Katten's fees and expenses going forward because they have no money to do so." ). The Court has already addressed the failure to pay outstanding fees. It will now turn to the purported inability to pay future fees.

Courts in the Second Circuit "have long recognized that a client's **continued** refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal under Local Rule 1.4." *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 166 (E.D.N.Y. 2006) (emphasis added). This ground for withdrawal has often been paired with other factors. For example, in *Parker*, the Court of Appeals stated that a "client's refusal to pay attorney's fees may constitute 'good cause' to withdraw . . . . In most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel." (*Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (citing *McGuire v. Wilson*, 735 F. Supp. 83, 84 (S.D.N.Y.1990) (collecting cases)). In *Stair*, the Eastern District Court considered a refusal paired with "a significant period of nonpayment of a substantial fee." *Stair v. Calhoun*, 722 F. Supp. 2d at 264 (citing *In re Albert*, 277 B.R. at 48).

Other courts have considered the refusal to pay with finding that the client "'deliberately disregarded' financial obligations or failed to cooperate with counsel." *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, No. 15-CV-6S, 2018 WL 2120139, at *2 (W.D.N.Y. May 8, 2018) (citing *Parker*, 439 F.3d at 104)). "There is an important distinction between mere nonpayment and deliberate disregard of financial obligations." *Id.* (quoting *Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP v. Hirsch*, No. 09-CV-5575 (CBA), 2010 WL 2667198,

at *2 (E.D.N.Y. June 23, 2010)). Courts have found a deliberate disregard when "the client has the ability to pay fees, but declines to do so." *Id.* (quoting *United States v. Stein*, 488 F. Supp. 2d 370, 374 (S.D.N.Y. 2007). In *Stein*, the District Court denied a motion to withdraw where the finances of the client "appeared to be dire." *Stein*, 488 F. Supp. 2d at 372. In analyzing a purported refusal to pay forthcoming obligations, the Court "must consider the entire situation." *Id.*; *see also S.E.C. v. Intracom Corp.*, No. CV02-4367(LDW)(ETB), 2007 WL 1593208, at *2 (E.D.N.Y. June 1, 2007) (denying application for withdrawal where the firm was "well aware" of the fact that the client was "unemployed and therefore *unable* to pay [legal] fees.") (emphasis in original).

The circumstances before this Court do not "involve a situation where the client is able, but refuses, to pay his attorney's legal fees." *See S.E.C. v. Intracom Corp.*, No. CV02-4367(LDW)(ETB), 2007 WL 1593208, at *2. Katten's own papers rely on the fact that its clients are *unable* to pay any fees, not that they are *unwilling* to do so. Nor can the Access Defendants' refusal to pay be seen as 'continued' based on the timeline presented by Katten. The Court finds that the Access Defendants' inability to pay insufficient as a basis for withdrawal at this time.

**Other Factors**

The Court "may also consider whether "the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." *Whiting v. Lacara*, 187 F.3d 317, 320–21 (2d Cir. 1999) (quoting Brown v. Nat'l Survival Games, Inc., No. 91-CV-221 (HGM), 1994 WL 660533, at * 3 (N.D.N.Y. Nov. 18, 1994)); *Marciano v. DCH Auto Grp.*, 2016 WL 11703590, at *2 (S.D.N.Y. Feb. 2, 2016). The Court "may also examine likely prejudice to the client, whether the motion is opposed, and whether the unpaid representation has become a severe financial

hardship to the firm." (*Stair v. Calhoun*, 722 F. Supp. 2d at 265 (citing *Team Obsolete Ltd.*, 464 F. Supp. 2d at 166–67). Courts have granted a motion to withdraw even though it would impact pending motion practice and a discovery schedule. *Thekkek v. LaserSculpt, Inc.*, No. 11-CV-4426, 2012 WL 225924, at *2 (S.D.N.Y. Jan. 23, 2012) (granting motion to withdraw in spite of disruption of the case where the client "deliberately disregarded his obligation" to pay attorney fees and ordering corporate defendant to "appear by new counsel within 30 days" of the issuance of the court's memorandum opinion). The Court will not allow an attorney to withdraw when doing so would "leave Defendants without counsel at a critical stage." *Tr. of New York City Dist. Council of Carpenters Pension Fund v. NYC Flooring L.L.C.*, No. 19-CV-6441 (LJL), 2020 WL 7016449, at *1 (S.D.N.Y. Oct. 7, 2020).

The Trustee argues that granting the Motion would prejudice him. Katten's potential withdrawal would render the Access Defendants unrepresented with "no practical way for the Court or the Trustee to communicate with or serve papers upon the Access Defendants." (Opp'n at 5, ECF No. 401). A corporation cannot appear pro se and "may appear in the federal courts only through licensed counsel." *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 192 (2d Cir. 2006). "The court must ensure . . . that the prosecution of the suit is not disrupted by the withdrawal of counsel." *Brown v. Nat'l Survival Games, Inc.*, No. 91-CV-221 (HGM), 1994 WL 660533, at * 3 (citation omitted).

Withdrawal of Katten would significantly delay proceedings that the parties have litigated for over a decade. No one would be accountable to respond to discovery. (Opp'n at 6, ECF No. 401). As the Trustee argues, there is reason to believe that withdrawal would result in a

default judgment that is can not be enforced under law of the United Kingdom. (*Id.* at 2); *see Rubin v. Eurofinance S.A.*, UKSC 2010/0184, [2012] UKSC 46 (24 Oct 2012).[4]

Furthermore, Defendant Littaye is a foreign national with little to no ability to communicate in English, and who requested, with help only of an online-translation tool, that the Court deny the Motion. (Jan. 22 Letter, ECF No. 409). Littaye sent numerous letters to the Court complaining about lack of communication from his attorney. In his most recent Letter, Littaye states "[m]y lawyer has sent me a lot of documents in English that I don't understand. He says he wants to stop defending me because I can't pay him any more, even though I've already paid him a lot of money." (Feb. 8 Letter, ECF No. 416).

Courts may deny leave to withdraw where the corporate defendant would be unrepresented. *See Jordan Int'l Co. v. M.V. "Cyclades"*, No. 89 CIV. 0614 (RPP), 1990 WL 103956, at *1 (S.D.N.Y. July 19, 1990). In denying motions to withdraw, Courts have also considered the fact that withdrawal would leave the opposing party with an "intractable litigant" who "resides overseas" and have already shown "significant difficulties in communicating." *Lassiter Worldspan, L.P. v. Ultimate Living Grp., LLC*, Civil Action No. 03-1081-JJF, 2006 U.S. Dist. LEXIS 21451, at *3 (D. Del. Apr. 20, 2006) (analyzing a motion to withdraw made pursuant to the District of Delaware Local Rules). Many of these same difficulties appear here.

The Court has discretion to condition leave to withdraw mitigating the prejudice or disruption that withdrawal would otherwise cause. *See, e.g. Mario Valente Collezioni, Ltd. v. Semeraro*, No. 02 CIV. 196 (SHS), 2004 WL 1057790, at *1 (S.D.N.Y. May 10, 2004) (refusing to grant counsel of record leave to withdraw "without ensuring that defendants are represented during the procedures for entry of a judgment."). The Court may deny a motion to withdraw

---

[4] *Rubin* is available at https://www.supremecourt.uk/cases/docs/uksc-2010-0184-judgment.pdf.

without prejudice based on present facts which are likely to change.  *See Doe v. Syracuse Univ.*, No. 518CV01100BKSTWD, 2019 WL 13117373, at *3 (N.D.N.Y. July 16, 2019) *on reconsideration*, No. 518CV01100BKSTWD, 2021 WL 365839 (N.D.N.Y. Feb. 3, 2021).

The Court finds that there is significant risk of disrupting a critical stage of the litigation and will not allow Counsel to withdraw at this stage of the proceeding on the basis of the facts presented.  The Court is cognizant of the risk of substantial harm that may result from Katten representing the Access Defendants without compensation.  Potential harms may result from its inability to represent its clients, from its ethical obligations, from its inability to communicate effectively with its clients or from a combination of these and other factors.  This Court will deny the Motion without prejudice.

## CONCLUSION

For the foregoing reasons, Katten's motion to withdraw is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via EOrders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: February 26, 2024**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**